# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

**NEW MEXICO TOP ORGANICS – ULTRA HEALTH, Inc.,**

    Plaintiff,

v.                                                                                                No. 17-CV-00599-JAP-LF

**LARRY KENNEDY, DAN MOURNING, and
RAINA BINGHAM, in their official capacities,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

New Mexico Top Organics – Ultra Health, Inc. (Plaintiff or Ultra Health) filed suit against three New Mexico State Fair officials in their official capacities, Defendants Larry Kennedy, Dan Mourning, and Raina Bingham (collectively, Defendants), seeking damages, injunctive relief, and a declaratory judgment for alleged violation of its First Amendment right to free speech.[1] Ultra Health alleges that Defendants impermissibly sought to restrict its constitutionally protected speech and engaged in viewpoint discrimination against Ultra Health by placing unreasonable restrictions on Ultra Health's exhibitor application for the State Fair in violation of the First and Fourteenth Amendments to the United States Constitution. Both parties have moved for summary judgment, and those motions have been fully briefed.[2] Because factual disputes remain the Court denies Plaintiff's Motion for Summary Judgment (Doc. 30) in full and Defendant's Motion for Summary Judgment (Doc. 34) in part. The Court will grant Defendants'

---

[1] *See* COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES (Doc. No. 1).
[2] *See* MOTION FOR SUMMARY JUDGMENT (Doc. No. 30); DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 35); REPLY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 34); PLAINTIFF NEW MEXICO TOP ORGANICS-ULTRA HEALTH INC.'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 36); DEFENDANTS' REPLY ON MOTION FOR SUMMARY JUDGMENT (Doc. 40).

Motion as to Plaintiff's claim for monetary damages only, dismissing that claim. The Court will reserve ruling on Plaintiff's remaining claims until the non-jury trial.

I.   BACKGROUND[3]

The State of New Mexico holds an annual fair the purpose of which is to "advanc[e] the agricultural, horticultural and stock raising, mining, mechanical and industrial pursuits of the state[.]" NMSA 1978, § 16-6-4 (A). The New Mexico State Fair is a separate government instrumentality managed by the State Fair Commission (Commission). *See* NMSA 1978, §§ 16-6-1, 16-6-16. The State Fair Commission is responsible for adopting and enforcing rules necessary to manage the State Fair. NMSA 1978, § 16-6-4(B). Defendant Larry Kennedy is the Chairman of the New Mexico State Fair Commission. Defendant Dan Mourning is the General Manager of Expo New Mexico, a state agency and annual site of the State Fair. Defendant Raina Bingham is the concessions and commercial exhibits manager for the New Mexico State Fair. Each year the State Fair accepts applications from companies and organizations for concession and exhibit space. All accepted vendors must comply with policies and procedures outlined in an annual publication distributed by the New Mexico State Fair. *See* NMAC 4.3.10.7 (C), 4.3.10.8 (B). The New Mexico State Fair Vendor Manual, which applies to both vendors and exhibitors, has a provision on prohibited items to include:

> The display, sale, or distribution of weapons (firearms, knives, mace, martial art items, chains, etc.), toy weapons, fireworks, *drug related merchandise or paraphernalia*, pornographic materials, offensive wording or graphics of any type, and counterfeit or "knock-off items" are prohibited unless authorized under the terms of the Space Agreement executed by the fair.

*See* DMSJ Ex. 4 & PMSJ Ex. 4, 2017 New Mexico State Fair Vendor Manual (emphasis added). The vendor application similarly provides a non-exclusive list of prohibited items to include "firearms, knives, swords, mace, martial art items, fireworks, *drug related merchandise or*

---

[3] The following facts are undisputed unless otherwise noted.

*paraphernalia*, pornographic materials, offensive wording or graphics, counterfeit or 'knock-off' items." PMSJ Ex. 1, 2017 New Mexico State Fair Application; *see also* DMSJ Ex. 5 to Def. MSJ. (emphasis added).

New Mexico Top Organics – Ultra Health, Inc. is a New Mexico non-profit corporation licensed by the State of New Mexico Department of Health (NMDOH) to produce, distribute and dispense medical cannabis and cannabis-derived products to patients enrolled in the NMDOH Medical Cannabis Program under the Lynn and Erin Compassionate Use Act, NMSA 1978, § 26-2B-1 to -7.[4] PMSJ UMF ¶¶ 10-13; PMSJ Ex. 5A, DOH Renewal Letter. In August of 2016 Ultra Health submitted an application for exhibit space at the New Mexico State Fair to Defendant Raina Bingham with the Fair's Concessions & Commercial Exhibits Department. PMSJ 30 UMF ¶ 16. The second page of the application listed that Ultra Health intended to bring "printed materials," "posters," "plants," "microscope," "post cards," "pens," "post-it notes," and "stress balls." DMSJ Ex. 7, Ultra Health 2016 NM State Fair Application. A proposed set-up design was submitted in a separate email after the application, indicating that Ultra Health would exhibit a "cannabis clone," "microscope," "educational materials on the medicinal and economic benefits of cannabis," a "rosin press lavender demonstration area," and a "secure area where people can view cannabis plants." PMSJ Ex. 5B, Ultra Health 2016 Booth Schematic. When space became available Ms. Bingham contacted Ultra Health and provided it with a space agreement contract that was signed by Ultra Health Board of Directors Chair Leigh Jenke and Defendant Dan Mourning, New Mexico State Fair General Manager. PMSJ Ex. 5C, Email Correspondence; PMSJ Ex. 5, 2016 NM State Fair Contract. Ms. Bingham states that she

---

[4] Defendants dispute Plaintiff's UMF Nos. 10-15 on grounds that Plaintiff uses these facts to argue the legality of cannabis. Defendants note that the federal Controlled Substances Act (21 U.S.C. § 811) does not recognize the difference between medical and recreational use of cannabis and continues to label cannabis as a Schedule I drug. (Doc. 35 at 2).

received Ultra Health's two-page application and the schematic of the space set-up separately, but that because she received the schematic so close to the opening of the State Fair she overlooked that it included a "cannabis clone" as part of the exhibit set-up.[5] DMSJ Ex. 6, Bingham Affidavit at ¶¶ 10-12.

On September 8, 2016, the first day of the State Fair, Ultra Health displayed a live cannabis plant in its exhibition space. PMSJ Ex. 5, Jenke Affidavit; DMSJ Ex. 6, Bingham Affidavit at ¶ 14. State Fair officials became aware of the plant and asked Ultra Health to leave, stating that Ultra Health had violated the terms of its contract which prohibited drug related merchandise and paraphernalia. The incident attracted media attention. PMSJ Ex. 5F, KOAT Article; PMSJ UMF ¶ 25; DMSJ UMF ¶ 21.

On January 23, 2017, Ms. Bingham sent an email to prior vendors providing them with the application to participate in the 2017 New Mexico State Fair. PMSJ UMF ¶ 26; PMSJ Ex. 7, Email Correspondence. Ultra Health received Ms. Bingham's email, and on April 11, 2017, Leigh Jenke submitted Ultra Health's application for exhibit space along with a depiction of the proposed booth design to Ms. Bingham. PMSJ UMF ¶ 27; PMSJ UMF ¶ 22. The set-up design was the same as the design Ultra Health provided the State Fair in 2016 which included a "cannabis clone" and a "secure area where people can view cannabis plants." PMSJ UMF ¶ 28;[6] PMSJ Ex. 5B, Ultra Health 2016 Booth Schematic; PMSJ Ex. 8, Ultra Health 2017 Booth

---

[5] Defendants claim that because the addendum with the booth schematic was received after the application and only one month before the opening of the State Fair, no one from the State Fair had reviewed the booth schematic and therefore the State Fair was not aware that the "plant" listed in Ultra Health's original application indicated a live cannabis plant. DMSJ UMFs 12-16; DMSJ Ex. 6, Bingham Affidavit. Plaintiff disputes these facts, suggesting that Ultra Health provided the booth schematic in response to an email from Ms. Bingham requesting the set up design the same day the application was submitted. Plaintiff suggests that Defendant should have known that "plants" indicated cannabis plants given Ultra Health's business. P. Resp. to DMSJ at 4-5, Ex. 2C Email Communications.

[6] Defendants dispute Plaintiff's UMF ¶ 28 on the grounds that though the 2016 and 2017 schematics are similar, the 2016 and 2017 applications that Ultra Health submitted to the State Fair are different in that the 2016 application does not list "cannabis clone" under the list of items, whereas the 2017 application does list "cannabis clone" among the items Ultra Health intended to bring. D. Resp. to PMSJ at 2.

Schematic. On the second page of the 2017 application under "Item" Ultra Health also listed "cannabis clone," "microscope," "educational materials," and "rosin press lavender demonstration area." DMSJ Ex. 9, Ultra Health 2017 NM State Fair Application.

In reviewing Ultra Health's application, Ms. Bingham noted that the first item listed on page two was a cannabis clone. She took the application to discuss it with management, including Defendant Mourning, Expo New Mexico's in-house counsel Joseph Holloway, and Deputy Manager Erin Thompson. PMSJ UMF ¶ 30; DMSJ ¶¶ 25-26. After the meeting, Ms. Bingham contacted Ms. Jenke of Ultra Health and indicated that because Ultra Health listed that it would be bringing a prohibited item – a cannabis clone – Ultra Health would need to submit a new State Fair application with a list of items that did not conflict with the State Fair's prohibited items list. PMSJ UMF ¶ 34; DMSJ UMF ¶ 26; PMSJ Ex. 2, Bingham Depo at 28:6-15, 32:11-22, 33:12-17; DMSJ, Ex. 6 Bingham Affidavit at ¶ 18. On April 27, 2017, Ms. Jenke wrote an email to Ms. Bingham requesting from her "a list of what will not be allowed this year from Ultra Health at the State Fair." DMSJ Ex. 10, Email Correspondence Between Jenke & Bingham. On May 2, 2017, using language she received from in-house counsel, Ms. Bingham responded as follows:

> You may not bring onto the EXPO New Mexico campus any and all cannabis and cannabis derived products including CBD products. You may also not bring any product that would be outside your New Mexico Department of Health approved distribution plan. Moreover, you may not bring any type of drug paraphernalia that could be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body any type of cannabis or other controlled substance. You are also precluded from displaying any image of the above restricted items in any way to include banners, flyers, clothing or any other medium.

DMSJ Ex. 10, Email Correspondence Btwn Jenke & Bingham; PMSJ Ex. 2, Bingham Depo. at 29:2- 30:3; 34:16-35:9. The sentence referencing drug paraphernalia was taken directly

from the state statute defining the term. DMSJ UMF ¶ 29; *see also* NMSA 1978, § 30-31-25.1. On May 8, 2017, Ms. Jenke, having determined the list of restrictions was too broad to allow Ultra Health to meaningfully inform people about "Ultra Health and the benefits of the alternative form of cannabis medicine," wrote to Ms. Bingham stating that Ultra Health had decided not to participate in the 2017 State Fair. PMSJ Ex. 11, May 8, 2017 Email Correspondence; DMSJ Ex. 6, Bingham Affidavit ¶ 21.

On May 31, 2017, Ultra Health filed its Complaint (Doc. 1) against Defendants Larry Kennedy, Dan Mourning, and Raina Bingham in their official capacities for First and Fourteenth Amendment violations. Ultra Health requested the Court to enter a declaratory judgment stating that the restrictions outlined in Ms. Bingham's May 2, 2017 email are unconstitutional, to enter a declaratory judgment stating that Defendants have violated Plaintiff's First Amendment rights, to enter a permanent injunction barring enforcement of the restrictions outlined in Ms. Bingham's May 2, 2017 email, and to award monetary damages plus attorneys' fees, costs, and expenses. Plaintiff's claim is brought under Sections 1983 and 1988 of the Civil Rights Act for alleged violations of its First Amendment rights under the United States Constitution, and accordingly the Court has jurisdiction under 28 U.S.C. § 1331.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment the Court is entitled "to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). The Court will analyze each motion

individually and on its own merits. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### III. DISCUSSION

#### A. Plaintiff's Section 1983 Claim for Monetary Damages

As a preliminary matter, the Court will address Defendants' contention that Plaintiff's Section 1983 claim for monetary damages is barred by the Eleventh Amendment. DMSJ at 9-10. Plaintiff does not contest this argument. P. Resp. to DMSJ at 12. "[W]hen a suit seeks money damages against an official of a state agency, suing that official in his or her official capacity, then the 'real party in interest' is the state, and the suit is barred by the Eleventh Amendment." *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds by Verizon Md. v. Pub. Serv. Comm'n of MD.,* 535 U.S. 635 (2002). Plaintiff sued three State Fair officials in their official capacities only for injunctive relief, declaratory judgment, and money damages. *See* Complaint at ¶¶ 111, 117 (Doc. 1). Because "neither a State nor its officials acting in their official capacities are 'persons'" against whom a claim for monetary damages can be brought under Section 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's claim for monetary damages and will dismiss that claim.

#### B. Plaintiff's First Amendment Free Speech Challenge

Plaintiff concedes that it may very well not violate the First Amendment for Defendants to enact a policy which prohibits the display and sale of illegal drug related merchandise and paraphernalia, but it challenges Defendants' "expansive" interpretation of their own written policies to institute a specific prohibition on Ultra Health. *See* P. Response to DMSJ at 1, 13.

7

Accordingly, Plaintiff is making an as applied challenge, rather than a facial challenge, to the State Fair's written and unwritten policies and to the State Fair's alleged individualized message to Ultra Health. *See id.; see also Faustin v. City & Cnty. of Denver, Colo.*, 423 F.3d 1192, 1196 (10th Cir. 2005) ("A facial challenge considers the restriction as a whole, while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case.").

In *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788 (1985), the Supreme Court delineated a three-step framework for analyzing the constitutional protections afforded to private speech on government property. *See Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997) (summarizing the three-step First Amendment free speech analysis). First, the Court must determine whether Plaintiff's proposed message constitutes protected speech. *See Cornelius*, 473 U.S. at 798. Next, the Court must analyze whether the State Fair is a public or nonpublic forum to determine the proper standard to apply. *See id.* Finally, the Court must assess whether the State's justifications satisfy the requisite standard. *See id*.

1. Protected Speech

The first step is easily met. "The First Amendment literally forbids the abridgment only of 'speech', but the Supreme Court has 'long recognized that its protection does not end at the spoken or written word.'" *Cressman v. Thompson*, 719 F.3d 1139, 1148 (10th Cir. 2013) (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)). The Court finds, and Defendants do not challenge, that Plaintiff's proposal to display and distribute information regarding medical cannabis, its products, and the State's medical cannabis program falls within the scope of protected speech contemplated by the First Amendment. DMSJ at 11.

2. Nature of the Forum

The next step of determining the nature of the forum establishes the Court's standard of review as "the extent to which the [State] may limit access to this property – *i.e.*, whether a heightened or reasonableness standard applies – depends on its categorization." *Summun*, 130 F.3d at 913. The parties here also agree that the State Fair is a limited public forum for the purpose of First Amendment analysis. *See* PMSJ at 12-13; DMSJ at 17.

"When the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum, it creates a 'limited public forum.'" *Summum*, 130 F.3d at 916. "Any government restriction on speech in a limited public forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral." *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007). "In other words, although content-based discrimination is permissible in a limited or nonpublic forum if it preserves the purpose of the forum, when the government moves beyond restricting the subject matter of speech and targets 'particular views taken by speakers on a subject,' such viewpoint discrimination is 'presumed impermissible.'" *Summum*, 130 F.3d at 917 (quoting *Rosenburger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995)). The crux of the parties' dispute in this case centers on whether the challenged speech restriction was "reasonable" and "viewpoint neutral." Therefore, summary judgments are appropriate only where there is no factual issue relating to the State Fair's proffered support for the restriction's reasonableness or the neutrality of the State Fair's policy.

3. Application of the Standard

   a. *Reasonableness*

In determining whether a speech restriction is reasonable a court must consider the "purpose of the forum and all the surrounding circumstances." *Cornelius*, 473 U.S. at 809. The restriction "need only be reasonable; it need not be the most reasonable or the only reasonable limitation." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 683 (1992). Here, the reasonableness of the State Fair's prohibition of the display, sale, or distribution of drug related merchandise or paraphernalia, and the interpretation of this policy to include images of drugs and drug paraphernalia as detailed in Defendant Bingham's May 2, 2017 email must be evaluated in light of State Fair's purpose as well as the surrounding circumstances.

Plaintiff argues that the "prohibited items list" Defendant Bingham provided to Ultra Health in the May 2, 2017 email, by prohibiting even images of cannabis and the display and images of cannabis processing tools is unreasonable in light of the State Fair's statutory purpose and Ultra health's corresponding goals of advancing "a legal agricultural industry of the state." PMSJ at 21. However, the State Fair also seeks to promote a safe and family friendly environment, which Plaintiff does not dispute, and Defendants claim that the restriction is reasonable in light of this purpose particularly because Plaintiff's product is still an illegal Schedule I substance under federal law. DMSJ at 19; D. Resp. to PMSJ at 5-6; DMSJ Ex. 3, Answers to Interrogatories. Defendants suggest that allowing vendors to display cannabis or images of the same would frustrate the State Fair's goal of creating a safe and family friendly atmosphere, and ultimately the State Fair's statutory goals, by inviting the possibility of allowing other vendors to display images of other Schedule I drugs. DMSJ at 19. Plaintiff disputes the

State Fair's rationale arguing that medical cannabis, in light of its legal purpose in New Mexico of aiding qualified patients, does not threaten safety. P. Resp. to DMSJ at 20-21.

On this record, the State Fair's posited justification for prohibiting illegal drug related merchandise and paraphernalia and images of the same appears to be reasonable in light of the State Fair's purpose. The prohibition on drug related merchandise and paraphernalia in the Vendor Manual and application is tucked among a list of other items to include weapons, toy weapons, fireworks, pornographic materials, and offensive wording or graphics of any type, the exclusion of which is consistent with the State Fair's claim that the restrictions aid in promoting a safe and family friendly environment. *See* DMSJ Ex. 4 & PMSJ Ex. 4, 2017 New Mexico State Fair Vendor Manual; PMSJ Ex. 1, 2017 New Mexico State Fair Application. A state's restriction at a state fair of materials related to illegal drugs is reasonable, particularly in instances such as this where everything about the fair has the imprimatur of the State on it. And courts have regularly held that state actors have a compelling interest in protecting youth, particularly in the areas of health, safety, welfare, and morals. *See, e.g., Reno v. ACLU*, 521 U.S. 844, 874 (1997) ("we have repeatedly recognized the governmental interest in protecting children from harmful materials").

But the question of whether the written policy as clarified in Ms. Bingham's May 2, 2017 email to Ultra Health is reasonable as applied to Plaintiff is less clear from the record before the Court. This is particularly so where the evidence presented raises a dispute regarding consistency in application of the policy (discussed below) as well as consistency in the State Fair's interpretation of the policy's scope – issues intertwined with viewpoint neutrality. *See, e.g.,* P. Response to DMSJ Ex. 6, Bingham Depo, 18:24-19:1, 66:1-12; DMSJ Ex. 6, Bingham Affidavit ¶¶ 4, 6. Because the Court finds that genuine issues of material fact exist as to viewpoint discrimination, discussed further below, the Court will reserve ruling on the reasonableness of

State Fair's restrictions and will allow the parties to present evidence and further argument on the issue of reasonablness at trial.

      b. *Viewpoint Neutrality*

Even were the Court to determine the State Fair's restrictions were reasonable, "[t]he existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a [policy] that is in reality a facade for view-point discrimination." *Cornelius*, 473 U.S. at 811. Defendants contend that Plaintiff's claim must fail because the list of prohibited items at the center of Plaintiff's challenge has been applied since 2008 to every prospective vendor or exhibitor regardless of the message or viewpoint of the applicant. *See* DMSJ Ex. 1, Bingham Depo. at 66:1-21; DMSJ Ex. 2. Mourning Depo. at 38:14-39:5, 42:3-19; DMSJ Ex. 6, Bingham Affidavit at ¶¶ 2-4, 6. In an affidavit Ms. Bingham stated that she has always interpreted the prohibition on drug related merchandise and paraphernalia "to include images" of the same and that since 2008 the prohibition has been included in each Vendor manual and used in her review of applications. DMSJ Ex. 6, Bingham Affidavit, ¶¶ 4, 6. She stated that she "review[s] each and every application submitted by prospective vendors and exhibitors" and "appl[ies] the prohibited merchandise and prizes provision" to each. DMSJ Ex. 6, Bingham Affidavit ¶¶ 2-3.

Plaintiff disputes this, presenting as evidence that Defendants engaged in viewpoint discrimination a number of exhibitor applications that were approved "even though their displays may have contained 'drug related' material." *See* P. Response to DMSJ at 2-3; PMSJ Exs. 13, 14, 15, 16 (Vendor/Exhibitor Applications). For example, Plaintiff points to the State Fair's approval of an application submitted by the Seventh Day Adventist Church. Plaintiff claims that Defendants applied unique scrutiny to Ultra Health's application whose message was pro-cannabis, yet did not apply the same scrutiny to the Church's application which indicated that the Church would display "health production displays," including "literature: spiritual, health, **anti-drug**, anti-

12

tobacco educational bracelets and pamphlets." P. MSJ at 26 (emphasis added); PMSJ Ex. 16, Seventh Day Adventist Church State 2017 Fair Application at 2. Plaintiff also points to the State Fair's alleged lack of clarity regarding the scope of its policy as evidence of viewpoint discrimination. P. Resp. to DMSJ at 18-19; Additional Facts # 30-33. For example, when asked whether the policy against "drug related merchandise" applied to pharmaceuticals, Ms. Bingham testified that it was nothing she has "ever had to consider," and vacillated when asked if images of cannabis were prohibited because it was a drug or an illegal drug. P. Resp. to DMSJ, Ex. 6 Bingham Depo. 18:21-19:1; 66:1-12.

Plaintiff claims that even if the policy were to refer to all drugs, Plaintiff also faced unique scrutiny as compared to other "pain relief" exhibitors whose applications Plaintiff submitted as evidence. P. MSJ at 27; PMSJ Ex. 13, 14, 15 (Vendor/Exhibitor Applications). Plaintiff alleges the State Fair approved these applications, including one that lists the exhibitor's plan to sell a product containing hemp oil, without further inquiry into what the products contained. PMSJ Ex. 15, Lemon-Aid Organics 2017 State Fair Application at 2. Plaintiff states that it was only after Defendants learned Ultra Health's viewpoint in the 2016 State Fair that they then "shut down" Ultra Health's pro-cannabis message when Ultra Health sought a booth at the 2017 State Fair. P. MSJ at 28. Relying on a case from the Eight Circuit Court of Appeals, *Gerlich v. Leath*, 861 F.3d 697 (8th Cir. 2017), Plaintiff suggests that after the 2016 media attention Defendants similarly altered the application of State Fair policies to specifically prohibit Plaintiff's viewpoint.[7]

Defendants do not dispute that the Seventh Day Adventist Church's application was approved without further questioning while Plaintiff's application caught Defendants' attention, but they presented testimony from Mr. Mourning that the Church would be equally prohibited from

---

[7] Plaintiff relies heavily on *Gerlich* suggesting the parallels between that case and the present case are "clear:" PMSJ at 18: P. Resp. to DMSJ at 23. Defendants attempt to distinguish *Gerlich*. DMSJ at 20-23. Because the Court is denying summary judgment on the substantive issues, the Court will not address the case in detail at this time. However, the parties' respective arguments over application of *Gerlich* to the facts of this case only serve to further highlight the material factual disputes.

displaying images of cannabis or other drugs, and that the State Fair would have asked the church to remove any such images if they came to the State Fair's attention. D. Resp. to PMSJ at 8; DMSJ Ex. 2 Mourning Depo. at 42:3-19, 43:18-44:4. Ms. Bingham also testified that if the Drug Enforcement Agency sought to have a booth at the State Fair displaying the destruction of seized cannabis plants she would disallow it. D. Response to PMSJ, Ex 1 Bingham Depo. at 66:18-21. Presenting testimony and an affidavit from Ms. Bingham, Defendants claim that the only reason Plaintiff's application was further questioned was because it specifically stated that Plaintiff intended to bring a "cannabis clone." D. Resp. to PMSJ at 8-9; DMSJ Ex. 1, Bingham Depo. at 22:1-4, 23:1-6; 24:2-4.; DMSJ Ex. 6, Bingham Affidavit at ¶ 17; PMSJ Ex. 8 at 2; DMSJ Ex. 9, Ultra Health 2017 State Fair Application at 2. In her affidavit Ms. Bingham stated that "as part of my routine of reviewing the applications of all vendors and exhibitors, when reviewing Ultra's application for the 2017 State Fair, I noticed that their application once again included their intentions of displaying a 'cannabis clone.'" DMSJ Ex. 6, Bingham Affidavit, ¶ 17. She testified that it was this "conflict with our acceptable items" that caused her to take Ultra Health's application to management. DMSJ Ex. 1, Bingham Depo. 23:1-6.

The Court concludes that there are genuine issues of material fact as to whether Defendants engaged in unlawful viewpoint discrimination. Because even the undisputed facts on the record are susceptible to the two difference inferences proffered by the parties, the Court will deny Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment, in part. The Court will grant only Defendants' request for summary judgment as to Plaintiff's claim for monetary damages.

IT IS THEREFORE ORDERED that:

1. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 30) is DENIED;

2. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 34) is DENIED in part;

3. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 34) is GRANTED in part in that only Plaintiff's claim for monetary damages will be dismissed;

4. A non-jury trial is scheduled to begin at 10:00 a.m. on Monday, June 25, 2016 at the United States Courthouse, 421 Gold Avenue SW, 6th Floor Historic Courtroom, Albuquerque, New Mexico.

5. The parties must attend a pretrial conference at 1:30 p.m. on May 22, 2018 at the United States Courthouse, 421 Gold Avenue SW, 6th Floor Historic Courtroom, Albuquerque, New Mexico.

6. As directed by United States Magistrate Judge Laura Fashing, the consolidated Pretrial order is due by May 15, 2018. Please provide the consolidated Pretrial Order in Word format to Judge Parker's proposed text emailbox: japproposedtext@nmcourt.fed.us. Counsel should use Judge Parker's Pretrial order form from the Court website at http://www.nmcourt.fed.us. Click on "Judges" under QuickLinks, click on "Judge James A. Parker," "Procedures," and "Pretrial Order Form."

_____
SENIOR UNITED STATES DISTRICT JUDGE